## COMMISSIONER OF INTERNAL REVENUE v. FERRO–ENAMEL CORPORATION.
### No. 9343.

Circuit Court of Appeals, Sixth Circuit.

April 7, 1943.

Bernard Chertcoff, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, and Bernard Chertcoff, all of Washington, D. C., on the brief), for petitioner.

Sterling Newell, of Cleveland, Ohio (Squire, Sanders & Dempsey, Sterling Newell, and Warren E. Hacker, all of Cleveland, Ohio, on the brief), for respondent.

Before ALLEN, HAMILTON, and Mc-ALLISTER, Circuit Judges.

HAMILTON, Circuit Judge.

This is a proceeding to review a decision of the United States Board of Tax Appeals (now the United States Tax Court).

Respondent is an Ohio corporation engaged in manufacturing a substance known as porcelain frit, a material used for coating metal, and its office and principal place of business is in Cleveland, Ohio. Respondent owns seven foreign subsidiaries, all of which are producing companies located in Canada, England, Holland, Australia, France, Brazil and Argentina. During 1936, respondent received income from the indicated sources and amounts and paid foreign income taxes thereon as follows:

| Country or Source of Income | Income | Tax Paid Foreign Country |
| --- | --- | --- |
| France | $ 186.00 | $ 33.48 |
| Canada | 8,404.00 | 1,668.31 |
| Holland | 4,075.15 | 315.55 |
| | $12,665.15 | $2,017.34 |

Of the above amount of income $11,538.78 represents dividends received by respondent and the balance, $1,126.37, represents other income.

Cobalt is one of the raw materials used by respondent in the manufacture of its product. There is no domestic source of supply and its price varies from seventy cents to two dollars and twenty cents a hundred pounds. Cobalt is usually found in combination with nickel and prior to 1936, respondent developed a method for the refinement of these two metals without separation. During 1936, Stanley Cole, a Canadian mining engineer, went to respondent's offices in Cleveland, Ohio, and solicited it to buy an interest in the stock of the Belorrain Mines, Ltd., a Canadian corporation, an alleged producer of cobalt in Canada. As a result of these negotiations a contract was entered into between the Canadian Corporation and respondent by which respondent agreed to purchase at specified prices all of the output of the Belorrain mines for a period of three years. As a part of the contract, respondent purchased 190,664.9 shares of the Belorrain stock at ten cents a share. During 1936 respondent received some shipments of ore from Canada, but during that year the Belorrain Mines, Ltd., went out of existence and its stock became worthless.

In its income tax return for the calendar year 1936, respondent deducted from its gross income from sources in the United States, the sum of $19,066.49, the amount it had invested in the Belorrain stock. It also claimed a credit of $1,593.91 for income taxes paid to foreign countries against income from sources without the United States. On audit and review, the Commissioner of Internal Revenue ruled that the loss of $19,066.49 on the Belorrain stock was deductible only from gross income from sources without the United States, and that when this loss was charged against income from sources without the United States, respondent had no income from which taxes paid to foreign countries could be deducted.

On review, the Board of Tax Appeals reversed the Commissioner. It is admitted the loss was sustained and this single issue is presented: Did respondent sustain the loss on the Belorrain stock from sources without the United States?

Section 119 of the Revenue Act of 1936, ch. 690, 49 Stat. 1648, Internal Revenue Code, § 119, 26 U.S.C.A. Int.Rev. Code, § 119, defines income from sources in the United States and also gross income from sources without the United States.

Subsection (b) provides that deductions shall be had from items of gross income from sources within the United States and Subsection (d) provides that deductions shall be had from items of gross income from sources without the United States. The respective sections recognize that a taxpayer would incur expenses attributable to the earnings of income in the United States and otherwise, and it was the intention of Congress to apportion properly or to allocate to the respective sources of income the incurred expenses attributable to the earnings of each.

The statute in question undertakes to classify the sources of income within the United States and without the United States by the nature and location of the activities of the taxpayer or his property which produces the income. If the income be from service, the place where the service is performed is decisive. If the income is from capital, the place where the capital is employed is controlling. If the income arises from the sale of a capital asset or a loss from its disposition, the place where the sale occurs, or the loss happens, is decisive.

In the case at bar, the loss by reason of the purchase of the Belorrain stock occurred when the corporation ceased existence and discontinued its mining operations. The evidence clearly shows that respondent invested in the stock of the Belorrain Mines, Ltd., for the sole purpose of obtaining raw material for its domestic business, and that it in no sense intended to make an investment with the expectation of receiving dividends on the stock. As we view the statute, this fact does not convert the loss into a deduction from respondent's income from sources within the United States. The loss grows out of an activity or use of property and the situs of the loss is not transferred to the home of respondent because respondent wished to obtain a source of raw material.

The case should be viewed and decided in the same light as if respondent had purchased a cobalt mine in Canada and had sustained a loss in its operation. Under these circumstances, it would clearly be a loss sustained from sources without the United States.

The order of the Board is reversed and the cause remanded for further proceedings consistent with this opinion.